```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Lisa Lane,

    Plaintiff,

                                  Case No. 2:03-cv-01048

    v.

                                  JUDGE GRAHAM

Daniel C. Cole,

    Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to the parties' agreement and this court's order, a bifurcated bench trial was held October 17-18, 2005, to resolve issues of liability between Lisa Lane ("plaintiff") and Daniel C. Cole ("Cole"), a Columbus police officer.  Plaintiff's complaint alleged various claims against the City of Columbus and Cole, under state and federal law, arising out of Cole's arrest of plaintiff in the early morning hours of November 14, 2002.  Prior to trial, most of the claims, including all claims against the City of Columbus, were dismissed.  At trial, the court was charged with determining whether Cole violated the Fourth Amendment by arresting plaintiff without probable cause, whether he used excessive force in arresting plaintiff, and whether he was guilty of malicious prosecution when he charged plaintiff with disorderly conduct and resisting arrest.

**I.  Findings of Fact**

Upon consideration of all the evidence, the court makes the following findings of fact:  At approximately 2:00 A.M. on November 14, 2002, plaintiff was standing in the parking lot of Lobaro's Night Club located at 980 Barnett Road, Columbus, Ohio.  Around this same time, plaintiff's friend, Terri McCoy ("McCoy") was inside Lobaro's with other patrons.  While inside, a woman by the name of Deborah confronted McCoy about statements McCoy allegedly made about Deborah's boyfriend, Larry.  As McCoy and Deborah walked towards the door to talk, Deborah grabbed McCoy by the head and placed her in a headlock, holding her head down.  Larry, who was also present at Lobaro's that evening, approached the two women.  Either Larry or Deborah punched McCoy in the eye, resulting in a blackened and heavily swollen eye.

After this assault, McCoy exited the building.  She was upset and crying, screaming that Larry and Deborah had "jumped" her, and complaining about her eye.  Plaintiff approached McCoy, attempting to calm and console her.  Larry, Deborah and others were also in the parking lot.  At this point another fight erupted between Boo Little John, a friend of McCoy's seeking revenge on her behalf, and Larry.  This fight took place in the parking lot and resulted in Boo Little John punching out several of Larry's teeth.  After having his teeth knocked out, Larry pulled a gun.  Others

intervened and Boo Little John left preventing further violence.

A crowd remained in the parking lot, including plaintiff, McCoy, and McCoy's friend, Genava. At this point, Cole was driving his cruiser north on Barnett Road when he heard loud arguing and shouting coming from the parking lot area. He turned his vehicle around, pulled into the parking lot and observed McCoy yelling and swinging her arms. The other women with McCoy were also talking in raised voices, but appeared to be using calming gestures with respect to McCoy. Cole sounded the air horn of the cruiser, but this had no apparent effect on McCoy or the other women.

Cole then exited his cruiser and approached the group. He ordered McCoy to stop, but she refused and acted as if she had not heard him. Cole then grabbed McCoy by the right elbow, in the escort position, in an attempt to separate her from the other women and calm her, but McCoy pulled away. Cole, without announcing his intention, then decided to arrest McCoy for disorderly conduct. He again grabbed McCoy by the arm and attempted to lead her to his cruiser. As Cole attempted to lead McCoy away, plaintiff interfered by grabbing McCoy and also grabbing Cole's arm. Plaintiff said, "stop","no", "she's not going anywhere, she didn't do anything wrong." Cole ordered plaintiff to step back and let McCoy go, but plaintiff refused and continued holding onto McCoy. Cole then took plaintiff to the ground using an arm-bar takedown. An arm-bar takedown is a trained grounding technique that uses

3

leverage against the suspects arm and shoulder to force the suspect to the ground. The move finishes with the suspect laying on his or her chest and the officer either kneeling or crouching behind in a position to handcuff the suspect.

After taking plaintiff to the ground, Cole handcuffed her and placed her in his cruiser. Cole then arrested McCoy for disorderly conduct. Plaintiff was charged with disorderly conduct and resisting the arrest of McCoy. Medics were summoned to examine plaintiff. She was treated for a scrape on her chin and then released at the scene.

In deciding this case, the court must assess the credibility of the witnesses. In assessing credibility, the court has considered its own experience with people and events.

When a person commits an act of violence upon another, they usually have a motive for doing so. The motive may be good or bad, but invariably, there is a reason for the action taken. Here, the plaintiff testified that she was totally unaware of Cole's presence when he approached her from behind and without warning grabbed her by the back of her pants and the top of her shirt and threw her on the ground. She denies that Cole gave any commands to her or McCoy. She maintains that she was the first person Cole physically touched. She denies that Cole attempted to lead McCoy away. She denies that she attempted to interfere with Cole's efforts to lead McCoy away, and she denies that she made any statements to Cole to

4

the effect that McCoy didn't do anything and that she wasn't going anywhere.

One thing that all of the witnesses agree upon is that McCoy had sustained a serious injury to her eye, that she was emotionally out of control, and that the plaintiff and the other three ladies were attempting to calm her and restrain her. Cole, of course, was not aware why McCoy was acting that way inasmuch as he was not present when she was assaulted and had received no information about her injury.

It is difficult to discern any motive for the actions plaintiff attributes to Cole. Why would he ignore the person causing the disturbance and violently attack one of the three individuals who were attempting to calm her? Cole's testimony is much more plausible. It certainly makes sense that he would first attempt to restrain and calm McCoy, and it is also understandable that the plaintiff, who was aware that McCoy was acting the way she was because she had been the innocent victim of an assault, would attempt to come to her aid and attempt to prevent her arrest, which she may well have perceived as unjust, under the circumstances.

In assessing the plaintiff's credibility, the court has also noted a number of discrepancies between plaintiff's testimony at trial and her testimony in a pretrial deposition. Although plaintiff claimed to have a good recollection of the events which occurred in the early morning hours of November 14, 2002, she gave

5

conflicting testimony on several points, including the time of her arrival at Lobaro's, the clothing she was wearing, and whether she was examined by a medic at the scene. Plaintiff denied that she had anything to drink that evening, but the medic's report from the scene indicates that she told him she had consumed some alcohol that evening.

At trial, plaintiff insisted that she was not wearing a leather jacket that evening and that she was wearing a white-collared pin-stripped blouse. She was then confronted with a photo taken at the scene, which revealed that she was indeed wearing a leather jacket and that her blouse was a print V-neck blouse, without a collar. What clothing she was wearing is relevant to her testimony about how Cole allegedly picked her up and threw her on the ground.

When plaintiff described the events that occurred in the parking lot, plaintiff denied that Cole arrived soon after the fight between Larry and Boo Little John. She acknowledged, however, in her deposition she testified that Louis Jones helped to break up that fight and "right after that, Cole pulls up". In her deposition, she described what the other people in the parking lot did when Cole arrived, saying "they acted like nothing ever happened - it all got silent." When confronted with her deposition transcript, she acknowledged that she was changing her testimony. The deposition testimony would suggest that plaintiff was indeed

6

aware of Cole's presence prior to her encounter with him.

McCoy testified on behalf of plaintiff. According to McCoy, she spent the evening at another club, where she consumed three drinks of Hennessey Cognac. She arrived at Lobaro's at about 1:45 a.m. She described how she was assaulted by Larry and Deborah. She attributed the assault to Larry and said that he hit her in the eye while Deborah was holding her head down and that he twisted his fist in her eye socket until it felt like her eye had burst open. She was screaming in pain and bleeding from the eye. After she left the bar and entered the parking lot, several friends came to her assistance, including the plaintiff. She kept repeating "Oh, my God. Look at my eye." and she was crying.

McCoy testified that plaintiff asked her what happened and put her arm around her and tried to hug her when Cole grabbed plaintiff from behind, picked her up and slammed her on the ground. Just before this occurred, she had started to walk back toward the door of the bar to find someone to help her and she was "scared." The court discounts McCoy's testimony. All of the witnesses agree that she was emotionally out of control. She had sustained a serious injury to her eye and was unable to see out of that eye. It is unlikely that she had the opportunity or ability to observe and understand what occurred between Cole and plaintiff. McCoy pled guilty to the disorderly conduct charge Cole filed against her.

Plaintiff called Louis K. Jones to testify on her behalf. Jones is the proprietor of Lobaro's, and was present on the morning in question. He described McCoy as a frequent customer and good friend and acknowledged he has known the plaintiff for about five or six years, saying that she sometimes sings karaoke at his club. He acknowledged that plaintiff was also a friend. Jones witnessed the assault of McCoy, which occurred inside his club. He ordered Deborah to leave and followed McCoy when she exited the front door, to make sure she was okay. He saw her standing in the parking lot talking to the plaintiff and two other women. McCoy was distraught and crying, saying it was "not fair" and she kept reaching for her eye. The other ladies were attempting to console her and to examine her eye. Jones acknowledged that McCoy was "loud" but denied that she was being aggressive toward anyone.

Jones saw a police car go by and then pull into the parking lot. The policeman walked past him while he was standing in the doorway. According to Jones, Cole walked up to the women "and the next thing I knew, he slid her like a rock on the water." According to Jones, Cole said nothing to any of the ladies and proceeded to grab the plaintiff by the shoulder and arm and "threw her across the lot."

This account contradicts the testimony of plaintiff and McCoy who said Cole picked plaintiff up from behind. In evaluating Jones' credibility, the court was struck by his hyperbole in

8

describing Cole's actions and by contrast, his minimalization of other significant events, which implicated his own conduct as the proprietor of Lobaro's.  In his recitation of the events leading up to the arrest of the plaintiff, he failed to mention the fact that shortly before Cole arrived, a violent altercation occurred on his parking lot, which could have ended in injury or death when Boo Little John pulled a gun on Larry, after Larry knocked his teeth out in retaliation for the injury Larry and Deborah had inflicted upon McCoy.  Near the end of his direct examination, Jones barely acknowledged this event saying "a couple of guys got in a fight on the lot before this - it ended an hour before".  Jones also seemed to want to make a point out of the fact that he had not called the police and that he didn't understand why Cole had entered his parking lot and approached the ladies.  It was the court's impression that Jones resented Cole's presence, even though one of his patrons, McCoy, had been viciously assaulted inside his club, and that this event had been followed by an altercation in the parking lot where one man's teeth were knocked out and another pulled a gun, and the victim of the earlier assault and one of her assailant's together with a number of other noisy patrons or on-lookers were present in the parking lot when Cole arrived.  Not only had Jones not called the police in response to either altercation, neither had he called for any medical assistance for his patron, McCoy, who had sustained a serious injury to her eye.

9

This is particularly hard to understand inasmuch as Jones is a twenty-year employee of the Columbus Fire Department, where he now works as a dispatcher.  The court concludes that Jones' testimony was distorted by his friendship with the plaintiff and McCoy, his apparent resentment against the police, and perhaps also by a sense of guilt and embarrassment over what occurred that morning at his place of business.

**III.   Conclusions of Law.**

Plaintiff brings her federal claims pursuant to 42 U.S.C. §1983 asserting violations of the Fourth Amendment of the United States Constitution.  Plaintiff also alleges state law intentional torts of assault and battery stemming from Cole's use of force.

Section 1983 provides that one may seek relief in this court against any person, who under color of state law, deprives him or her of any rights, privileges, or immunities secured or protected by the Constitution.  See 42 U.S.C. §1983.  To prove her federal claim, plaintiff must show that Cole knowingly violated plaintiff's constitutional rights, that he did so under color of state or local law, and that the violation occurred without due process of law. O'Brien v. City of Grand Rapids, 23 F. 3d 990, 995 (6th Cir. 1994)(citing Rhodes v. McDannel, 945 F.2d 117, 119 (6th Cir. 1991) *cert. denied*, 502 U.S. 1032).

**A.    Plaintiff's Fourth Amendment Claims.**

10

Plaintiff alleges that Cole violated her Fourth Amendment rights in three ways. First, plaintiff alleges that her arrest was unlawful because Cole lacked probable cause. Plaintiff also claims that Cole used excessive force in making the arrest, and lastly, that he maliciously prosecuted her. This court finds for the Cole on all claims.

**1. Unlawful Arrest and Seizure.**

An arrest made without probable cause violates the Fourth Amendment. Gardenhire v. Schubert, 205 F.3d 303, 313 (6th Cir. 2000). Probable cause to make an arrest exists when the officer possesses "reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Greene v. Reeves, 80 F.3d 1101, 1106 (6th Cir. 1996)(citations omitted). "Probable cause is assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." See Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2002)(citations omitted). Therefore, probable cause determinations involve an examination of all facts and circumstances within the officer's knowledge at the time of the arrest. Id.

The Supreme Court further instructs that an officer's state of mind is irrelevant in probable cause determinations. Devenpeck v. Alford, 125 S. Ct. 588, 593 (2004). Deficiencies in a criminal complaint and/or a failure to charge the suspect under a proper

11

statute do not affect the probable cause analyses because the officers' "subjective reasons for making the arrest need not be the criminal offense as to which the known facts provide probable cause." See id. at 594.

At trial, plaintiff argued that because Cole never verbalized his intention to place McCoy under arrest, probable cause for resisting arrest could not exist. This argument lacks merit because the crime of resisting arrest forbids interference "recklessly or by force." See Columbus City Code §2321.33. Therefore, specific intent or knowledge that one is resisting an arrest is not required.[1]

Moreover, plaintiff's knowledge that McCoy was being arrested is not at issue; rather, probable cause determinations are concerned with what the officer knew at the time. Klein, 275 F.3d at 550; Devenpeck, 125 S. Ct. at 593. When he arrested plaintiff, Cole knew that he was in a tense situation, dealing with a woman (McCoy) who was upset, screaming, and engaged in disorderly conduct. His verbal commands had no effect and McCoy physically pulled away when he attempted to remove her. Then, as he attempted to arrest McCoy, plaintiff interfered by grabbing McCoy and saying "stop", "no", "she's not going anywhere, she didn't do anything

---

[1] See also State v. Davis, 145 Ohio App. 3d 296, 299 (2001)(rejecting the argument that voluntary intoxication is a defense to resisting arrest because "recklessness requires only that the offender act with heedless indifference to the consequence [and] perversely disregard a known risk that his conduct is ... likely to be of a certain nature.")(citations and internal quotations omitted).

12

wrong." Plaintiff also grabbed Cole's arm while he was attempting to arrest McCoy. Based on these actions, Cole had probable cause to believe that plaintiff was intentionally or recklessly interfering with the arrest of McCoy. Therefore, plaintiff's Fourth Amendment rights were not violated when Cole arrested her.

### 2. Excessive Use of Force.

The right to be free from excessive force during an arrest is a constitutional right conferred under the Fourth Amendment's prohibition against unreasonable seizures. Graham v. Connor, 490 U.S. 386, 393-94 (1989). Under the Fourth Amendment, an officer's use of force is bound by a standard of objective reasonableness. Id. In determining whether the force used was reasonable, the court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." See id. at 396. (Citations and internal quotations omitted). The Supreme Court further instructs:

> [P]roper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

See id. (Citations omitted).

Determinations of reasonableness must allow for the fact that

13

police officers are forced to make split second judgments about the amount of force necessary under circumstances that are tense, uncertain, and rapidly evolving. Id. at 397. Moreover, the right to make an arrest or stop necessarily grants the right to use some degree of physical coercion or threat thereof to effect it. Graham, 490 U.S. at 396. In determining whether the amount of force used was reasonable, courts must look to the totality of circumstances and view the facts from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight vision. Kostrzewa v. Tory, 247 F.3d 633, 639 (6th Cir. 2001). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of the judges chambers, violates the Fourth Amendment." Id. (citing Graham, 490 U.S. at 396).

Cole's decision to take plaintiff to the ground using an arm-bar takedown, while possibly not the best decision, cannot be characterized as unreasonable under the circumstances. Cole was in a tense and hostile situation, and because his verbal commands were ineffective, the possibility of violence existed. Cole's attempts to remove McCoy from the situation were physically thwarted when plaintiff grabbed McCoy and Cole's arm. The officer was alone at the scene and outnumbered in the group. Plaintiff had a strong physical presence, standing 5 feet 5 inches tall and weighing 198 pounds, while McCoy was out of control, yelling, swinging her arms, and refusing to cooperate. Moreover, this incident took place

14

outside a night club after 2:00 A.M., making it reasonable for Cole to assume that plaintiff, and those in her group, had been drinking.

In addition to these factors, the force used by Cole was of a limited degree. Cole used verbal commands and an arm-bar takedown. Both Cole and his supervisor, Sergeant Gregory DeRosier ("DeRosier"), testified that such acts constitute Level 0 and Level 1 on the "Levels of Control" continuum, which comprised the first page of the Action-Response Report, defendant's Exhibit E. "Levels of Control" ranged from 0 to 8 and the actions taken by Cole at the scene were the least severe of any techniques listed. Further, DeRosier testified that the arm-bar takedown is a trained grounding technique, taught to and practiced by members of the Columbus Police Department. It is not likely to cause serious injury when properly performed. For these reasons, the court finds, based on the totality of the circumstances, that Cole did not use excessive force when he arrested plaintiff for disorderly conduct and resisting arrest.

### 3. Malicious Prosecution.

The criminal charges Cole filed against plaintiff were dismissed. Both plaintiff and Cole appeared at court on one or more occasions, but no trial was held. No evidence was offered which would shed light on why the criminal charges were dismissed.

Recent Sixth Circuit decisions instruct that a plaintiff may

15

bring a Fourth Amendment malicious prosecution claim in conjunction with other Fourth Amendment claims. Spurlock v. Sattervield, 167 F.3d 995 (6th Cir. 1999); Darrah v. City of Oak Park, 255 F.3d 301 (6th Cir. 2002); and Johnson v. Ward, 2002 WL 1774215, 43 Fed. Appx. 779 (6th Cir. 2002); contrasted against and overruling Frantz v. Village of Bradford, 245 F.3d 869 (6th Cir. 2001).

The Sixth Circuit has yet to define the necessary elements of a §1983 malicious prosecution claim when that claim is brought under the Fourth Amendment. Thacker v. City of Columbus, 328 F.3d 244, 259 (2003); Robinson v. City of Memphis, 340 F. Supp. 2d 864, 871 (W.D. Tenn. 2004). The Sixth Circuit stated in Thacker:

> Although this Court has yet to resolve the elements of a federal malicious prosecution claim, it is clear that a plaintiff must show, at a minimum, "that there was no probable cause to justify [his] arrest and prosecution." [Darrah, 255 F.3d at 312]. ... Because he cannot show the absence of probable cause, Thacker cannot demonstrate any seizure in violation of the Fourth Amendment. Thus, we need not attempt to enunciate the other elements of a malicious prosecution claim here.

As in Thacker, Cole had probable cause to arrest plaintiff. Moreover, without specifically defining the remaining elements of a federal malicious prosecution claim, this court notes that it is universally accepted that a claim of malicious prosecution requires some showing of malice. See 52 AM. JUR. 2D Malicious Prosecution §8 (2005). Plaintiff failed to show any malice on behalf of Cole in arresting or prosecuting plaintiff for disorderly conduct and resisting arrest. For these reasons, plaintiff's malicious

16

prosecution claim fails.

### B. Plaintiff's State Assault and Battery Claims.

Lastly, this court also finds for Cole on plaintiff's state law assault and battery claims. Under Ohio law, an assault is the willful threat or attempt to harm or touch another offensively, coupled with a definitive act by one who has an apparent present ability to do the harm or to commit the offensive touching. Smith v. John Deere Company, 83 Ohio App.3d 398, 406 (1993). The tort of battery is defined as the harmful or offensive touching of another person. Love v. City of Port Clinton, 37 Ohio St. 3d 98, 99 (1988).

Under Ohio law:

> A peace officer ... is not liable for injuries inflicted by him in the use of reasonably necessary force to preserve the peace and maintain order, or to overcome resistance to his authority. Thus[,] an officer making an arrest is justified in using sufficient force to subdue the prisoner although not acting in self defense.

See State v. Sells, 30 Ohio Law Abs. 355 (1939)(citations and quotations omitted). See also Alley v. Bettencourt, 134 Ohio App. 3d 303, 313 (1999)("Officers are privileged to commit battery when making a lawful arrest, but the privilege is negated by the use of excessive force.")

Cole, as discussed above, had probable cause to arrest plaintiff and did not use excessive force. Therefore, Cole was privileged in taking plaintiff to the ground with a trained grounding technique and handcuffing her while on the ground. Under

17

the applicable law, Cole is not liable for any injuries sustained by plaintiff.

**IV. Conclusion**

For the foregoing reasons, this court finds for Cole on all plaintiff's claims.  The clerk shall enter final judgment in favor of Cole and dismiss plaintiff's complaint with prejudice.  Costs shall be taxed against plaintiff.

It is so ORDERED.

                                s/James L. Graham
                                JAMES L. GRAHAM
                                United States District Judge

DATE: October 31, 2005